Joseph G. Adams (#018210)
Taryn J. Gallup (#035002)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Email: jgadams@swlaw.com
       tgallup@swlaw.com
Attorneys for Plaintiff/Counterdefendant Great
American Duck Races, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Great American Duck Races, Inc., an Arizona corporation,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Kangaroo Manufacturing, Inc., a Florida corporation, and Yagoozon, Inc., a Rhode Island corporation, and Justin Nicola Ligeri, an Individual<br><br>　　　　　　　Defendants. | Case No. 2:17-cv-00212-ROS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR AWARD OF ATTORNEY FEES** |
| Kangaroo Manufacturing, Inc., a Florida corporation, and Yagoozon, Inc., a Rhode Island corporation, and Justin Nicola Ligeri, an Individual<br><br>　　　　　　　Counterclaimants,<br><br>v.<br><br>Great American Duck Races, Inc., an Arizona corporation,<br><br>　　　　　　　Counterdefendant. | |

Plaintiff/Counterdefendant Great American Duck Races, Inc. ("GAME") objects to Defendants' Motion for Award of Attorney Fees ("Fee Motion"). GAME's objection is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Joseph G. Adams, and all pleadings, motions, exhibits, and other documents previously filed with the Court in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

For nearly thirty years GAME has marketed, sold, and publicly displayed the GAME Duck. Throughout this time, GAME has diligently, and in good faith, sought to protect the GAME Duck and derivative works—such as the Derby Duck—from products that infringe on GAME's intellectual property rights. As part of these efforts, GAME brought this action against Defendants, who were manufacturing and selling an inflatable duck pool float that GAME maintained was substantially and confusingly similar to the Derby Duck. Throughout this litigation, GAME endeavored to settle with Defendants and conserve the parties' time and resources by narrowing the issues before the Court. Following a two-day bench trial in March 2019, the Court found in favor of Defendants on all of GAME's claims. *See* Order, *Great American Duck Races, Inc. v. Kangaroo Mfg., Inc.*, No. CV-17-00212-PHX-ROS (D. Ariz. July 18, 2019) (ECF 198) ("Order").

As the prevailing party, Defendants now move for their attorneys' fees solely under the Copyright Act. *See* 17 U.S.C. § 505. Defendants are not entitled to their attorneys' fees. The mere fact that GAME did not prevail in this action does not render its claims objectively unreasonable or frivolous sufficient to warrant awarding fees under the Copyright Act. Rather, the totality of the circumstances presented in this action demonstrate that GAME's claims were objectively reasonable, not frivolous, and stemmed from GAME's good-faith motivation to protect its intellectual property rights. These factors are further underscored by the fact that defense counsel admitted during this litigation that GAME's claims presented issues of fact that warranted trial, and the Order itself specifically notes Defendants' business practice of designing products that were

only "slightly different versions" of existing products "without apparent concern about possible intellectual property violations." Considerations of compensation, deterrence, and the underlying purposes of the Copyright Act further weigh in favor of denying the Fee Motion in its entirety. Finally, to the extent that the Court is inclined to award fees to Defendants, their claimed fees are not reasonable and should be reduced to reflect only work performed in defending against GAME's copyright claim, and further reduced to account for certain of defense counsel's impermissible billing entries.

## II.   DEFENDANTS ARE NOT ENTITLED TO THEIR ATTORNEYS' FEES UNDER THE COPYRIGHT ACT

The Copyright Act authorizes courts to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court and the Ninth Circuit have instructed courts evaluating a prevailing party's fee request under section 505 to consider several nonexclusive factors such as: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness of the legal and factual arguments in the case; and (5) the need to advance considerations of compensation and deterrence. *See Kirtsaeng v. John Wiley & Sons, Inc.* 136 S. Ct. 1979, 1985 (2016); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008). Courts in the Ninth Circuit also consider the purposes of the Copyright Act when considering whether to award attorney's fees to a prevailing party. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). "There is no precise rule or formula" for evaluating a fee request and a fee award should be granted "only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Importantly, and contrary to Defendants' assertion,[1] attorney's fees should not automatically be awarded to every prevailing party. *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996), *as*

---

[1] Defendants mischaracterize the standard for awarding attorney's fees by citing an out-of-circuit decision for the proposition that granting fees and costs "is the rule rather than the exception and [fees] should be awarded routinely." (Fee Mot. at 3 (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008))). That is not the standard in the Ninth Circuit. *See Metcalf v. Bochco,* 200 F. App'x 635, 641 (9th Cir. 2006) ("Yet, fees are not awarded automatically to every prevailing party, but at the court's discretion.").

- 2 -

1  *amended* (June 14, 1996).  For the reasons discussed below, the factors weigh against
2  awarding Defendants their requested attorneys' fees.

### 1. Degree of Success Obtained

GAME acknowledges that Defendants prevailed at trial in their defense of GAME's copyright claims.  However, Defendants did not succeed on their substantive counterclaims, which they voluntarily dismissed after prompting from the Court.[2]  Although the "degree of success obtained" factor weighs in favor of a party who prevailed on the merits, it is not dispositive of the attorney's fee inquiry.  *Williams v. Bridgeport Music, Inc.*, No. LA CV 13-06004 JAK (AGRx), 2016 WL 6822309, at *3 (C.D. Cal. Apr. 12, 2016), *aff'd sub nom. Williams v. Gaye*, 885 F.3d 1150 (9th Cir. 2018), and *aff'd sub nom. Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018).  Rather, the degree of success obtained must be evaluated in connection with the other *Fogerty* factors and "does not alone call for an award under the Copyright Act." *Id.*  For the reasons discussed below, the remaining *Fogerty* factors weigh in GAME's favor.

### 2. Frivolousness

Courts often address *Fogerty's* frivolousness and reasonableness factors together.  *See Zindel v. Fox Searchlight Pictures, Inc.*, No. CV 18-1435 PA (KSx), 2018 WL 6074566, at *3 (C.D. Cal. Oct. 26, 2018).  However, the standard for frivolousness tends to be "somewhat higher" than the objective reasonableness standard.  *Id.* (internal quotation omitted).  A copyright claim is frivolous "only when the result is obvious or the arguments are wholly without merit." *TSX Toys, Inc. v. 665, Inc.*, No. ED CV-14-02400-RGK-DTBx, 2016 WL 6922344, at *3 (C.D. Cal. Mar. 14, 2016) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003)).  A copyright "claim is *not* frivolous merely because it is unsuccessful." *Zindel*, 2018 WL 6074566, at *3 (emphasis added) (internal quotation omitted).

---

[2] In a status hearing on July 27, 2018, Defendants voluntarily dismissed counterclaims numbered 4-7.  (ECF 104).  The only counterclaims that remained were claims for declaratory relief that were mirror images of GAME's substantive claims.

1    Although Defendants devote merely three sentences to analyzing the frivolousness
2    factor, they appear to equate the Court's finding that the Derby Duck and Kangaroo's
3    duck lack substantial similarity with a determination that GAME's copyright claim was
4    frivolous. (Fee Mot. at 6). Neither the Order nor Ninth Circuit case law supports
5    Defendants' argument. Courts have declined to deem a plaintiff's copyright claim
6    frivolous notwithstanding a lack of substantial similarity between the parties' works. For
7    example, in *Pasillas v. McDonald's Corp.*, the court found that even though the parties'
8    works shared only unprotectable elements and were "not at all alike," that was not
9    sufficient to prove frivolousness. 927 F.2d 440, 443-44 (9th Cir. 1991) (noting that
10   "[d]eterminations about substantial similarity are rarely obvious."). Here, the Court found
11   that the similarity of the Derby Duck's key protectable element (i.e., sunglasses) to the
12   Kangaroo duck was "not enough for GAME to pass the extrinsic test." (Order at 10).
13   But, GAME's failure to satisfy the extrinsic test for substantial similarity, without more,
14   does not support a finding of frivolousness. *See, e.g.,Zindel*, 2018 WL 6074566, at *3-4
15   (plaintiff's copyright claim was not frivolous even where the two works shared only
16   "nonprotectable elements" and plaintiff failed to satisfy the extrinsic test).

17   The Court's findings that GAME owns a valid copyright in the Derby Duck and
18   that Defendants copied the Derby Duck further demonstrate that GAME's copyright claim
19   was not frivolous. In *Amusement Art, LLC v. Life Is Beautiful, LLC*, the Ninth Circuit
20   upheld a district court's denial of a fee request predicated on a plaintiff's failed copyright
21   claim. 768 F. App'x 683, 687 (9th Cir. 2019). In denying defendant's fee request, the
22   court found that plaintiff's copyright claim was not frivolous, in part, because plaintiff
23   held a valid, registered copyright of the image at issue and that defendant's founder
24   admitted to pulling several images of plaintiff's artwork off the internet and relying on
25   those images to promote his own business. *Id.* Here, GAME established at trial that it
26   owns a valid copyright for the Derby Duck. (Order at 3-4). Moreover, the Court
27   explicitly found that Defendants were in possession of the Derby Duck when designing
28   Kangaroo's duck and, "to some extent, modeled Kangaroo's duck after the Derby Duck."

- 4 -

*Id.* at 5. The Court also found that GAME successfully proved that "Kangaroo 'copied' the Derby Duck when designing its own duck" and consequently GAME proved the "copying" requirement of its copyright claim. *Id.* at 7-8. These factual findings directly undercut Defendants' frivolousness arguments.

### 3. Motivation

A court will not impugn a losing party's motivation absent direct evidence or a credible suggestion that it brought its copyright claim in bad faith. *See, e.g.*, *TSX Toys*, 2016 WL 6922344, at *3-4 (no bad-faith motivation where "[d]efendant has not shown [p]laintiff had any motivation other than protecting an interest it believed it had."); *Guino v. Beseder, Inc.*, No. CV 03-1310-PHX-MHM, 2009 WL 3188375, at *2 (D. Ariz. Sept. 29, 2009) (denying request for attorney's fees where "there [was] no evidence that either party was motivated by a desire to harass or otherwise abuse the litigation process").

Defendants offer nothing more than two conclusory assertions that GAME had an improper motive to bring this lawsuit, neither of which is availing. First, Defendants argue that GAME acted in bad faith by not dismissing its request for monetary relief until "a few weeks before trial," which purportedly forced Defendants to prepare a defense to GAME's monetary damages and lost profits claims. (Fee Mot. at 6). Defendants' assertion conveniently ignores the fact that it was Defendant Yagoozon's own Chapter 7 bankruptcy filing that caused GAME to move for dismissal of its claims for monetary relief. (*See* ECF 147). After Defendant Yagoozon filed its bankruptcy petition it became abundantly clear to GAME that defendants did not have the financial resources to pay an award of damages and were therefore likely judgment proof. Contrary to Defendants' assertion, GAME's dismissal of its monetary damages claims reflects its good faith intent to narrow the issues for trial and also enabled the Court to convert this action from a jury trial to a bench trial, which in turn saved the Court's and the parties' time and resources.

Defendants' contention that they were unfairly prejudiced by GAME's dismissal of its request for monetary relief is contradicted by their February 15, 2019 response to GAME's motion for voluntary dismissal, in which they stated that they "do not object to

GAME's motion to dismiss its claims for monetary relief *and would have stipulated to the request*." (ECF 149 (emphasis added)).  At that time, Defendants did not raise any objection that dismissing GAME's monetary damages claims would prejudice their trial preparation efforts.  Defendants' change in tune is also belied by their counsel's billing records.  Specifically, the billing records for Defendants' counsel, Julia Williams, show that she did not work on the case—let alone engage in any trial preparation—between December 4, 2018 and March 4, 2019.  *See* Williams Decl., Ex. A.  The billing records from Carpenter Hazlewood Delgado & Bolen, LLP contain an October 8, 2018 entry stating, in part, "begin trial preparations."  Rudder Decl., Ex. A.  Thereafter, between October 8, 2018 and February 2019, it appears that Defendants' counsel did not engage in any further trial preparation specific to defending against GAME's claims for monetary relief, which were ultimately dismissed by the Court on February 20, 2019 (ECF 151).

Defendants' cursory assertion that GAME had an anti-competitive motive to bring this action is also unavailing.  (Fee Mot. at 6).  Their sole support for this argument is that GAME's successful sales figures somehow prove that it was motivated to assert its copyright claim against Defendants to keep them out of the market.  *Id.*  Defendants did not elicit any credible testimony on this issue at trial and the Court's Order did not make any such findings.  *Dalton-Ross Homes, Inc. v. Williams,* No. CV-06-1301-PCT-FJM, 2008 WL 324199, at *1 (D. Ariz. Feb. 5, 2008) (attorney's fees under Copyright Act not warranted where there was "no credible suggestion" that plaintiff's copyright claim was motivated by spite, ill will, bad faith or was meant to vex or harass).

### 4.      Objective unreasonableness

The mere fact that a plaintiff did not prevail on its copyright claim cannot establish objective unreasonableness.  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).  In balancing the *Fogerty* factors, a court must give "substantial weight" to the objective unreasonableness factor.  *Kirtsaeng*, 136 S. Ct. at 1986-89.  A district court is uniquely positioned to analyze the objective unreasonableness of a losing party's position

because it has "considered and ruled on the merits of a copyright case" and can "easily assess whether the losing party advanced an unreasonable claim or defense." *Id.* at 1987.

Defendants' argument that GAME's copyright claim was objectively unreasonable is the same as its frivolousness argument (Fee Mot. at 5-6), which as noted above, is unavailing. In addition, the Court's findings that Defendant Kangaroo "copied" the Derby Duck when designing its own duck (Order at 7-8), coupled with its findings regarding Defendant Ligeri's business philosophy, further support the objective reasonableness of GAME's copyright claim. Based on GAME's detailed evidentiary presentation concerning Defendants' design process, the Court found that "[i]n practice, it was clear that Ligeri and his companies would identify successful products on Amazon and then make slightly different versions of those products without apparent concern about possible intellectual property violations." (Order at 4). Because Defendant Ligeri intentionally designs products that straddle the line between intellectual property infringement and original works, it was not unreasonable for GAME to assert its copyright claim against Defendants.[3] *See Seltzer*, 725 F.3d at 1181 (copyright claim not unreasonable where even though defendant's use "transformed" plaintiff's work, the "transformation was far from obvious given [defendant's] only slight alterations to the original.").

Defendants' admission in open court that this action presented factual issues warranting a trial on the merits further highlights the objective reasonableness of GAME's copyright claim. At the Court's July 27, 2018 status conference, Defendants conceded that GAME presented evidence in this action that precluded summary judgment.

> MR. GRIMM: Well, there's no evidence, there's plaintiff's accusation. There's plaintiff's claim that we used something that was similar, and we didn't use a mark other than a photograph of our actual product. So the photograph of the

---

[3] Indeed, the same day that Defendants filed their Fee Motion, the Third Circuit Court of Appeals upheld a preliminary injunction against Kangaroo Manufacturing Inc. stemming from a District of New Jersey lawsuit alleging copyright infringement, trade dress infringement, and unfair competition claims against Kangaroo. *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 218 (3d Cir. 2019). The court found that plaintiff established a likelihood of success on the merits of its copyright infringement claim against Kangaroo. *Id.* at 223.

- 7 -

product is not a trademark in any sense, it's a picture of what we're selling.

THE COURT: Okay. I'm looking at that, because I had to remind myself. And I see a duck and a duck, one with glasses and one without glasses. So why isn't that – why wouldn't the jury need to decide, based on the picture, that there is substantial similarity?

MR. GRIMM: As I'm reading the Court's questions, I see the lean toward the issues of fact.

THE COURT: Okay.

MR. GRIMM: So –

THE COURT: All right. Well, good try. And I really appreciate your candor. So all right. Now, Counts 3 through 4. Before I go through that, let me ask you, Mr. Grimm, I'm going to ask the same thing, you have alleged here false designation of the origin requires proof of the same elements as a trade – claim for trademark. Do you agree – before I ask Mr. Adams, do you agree there are issues of fact here?

MR. GRIMM: In light of our conversation, I do, Judge.

THE COURT: Okay. So let's go to trial. We're going to set this matter for trial.

(July 27, 2018 Status Conference Tr. at 16:7–17:10 (ECF 106)). Because issues of fact concerning substantial similarity between the Derby Duck and Kangaroo's duck necessitated a trial, GAME's copyright claim was objectively reasonable. *Robert Kubicek Architects & Assocs., Inc. v. Bosley*, No. 2:11-CV-2112 (FB), 2016 WL 8999243, at *2 (D. Ariz. Oct. 24, 2016) (fact that jury trial was required to determine whether defendant "improperly copied original elements" of plaintiff's work demonstrated that plaintiff's "position was neither frivolous nor objectively unreasonable.").

    **5. Considerations of compensation, deterrence, and the purposes of the Copyright Act**

Defendants argue that the deterrence factor weighs in favor of awarding their

- 8 -

1   attorneys' fees because a fee award would discourage GAME and GAME's counsel from
2   "filing suits lacking a factual basis against competitors that have not infringed its
3   copyrights." (Fee Mot. at 7). This argument is premised on the false assumption that
4   GAME engaged in conduct that should have been deterred. For the reasons noted above,
5   GAME's copyright claim was not frivolous or unreasonable. Indeed, the Court noted in
6   its Order that there was no "hard-and-fast-rule" that would dictate the outcome of its
7   substantial similarity analysis between the Derby Duck and Kangaroo's duck. (Order at
8   10). Moreover, Defendants' *own counsel* admitted in open court that GAME's claims had
9   a factual basis when he agreed that disputed factual issues warranted a trial of this action.
10  *See Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (upholding denial of attorney's
11  fees where the district court noted, in part, that the copyright claims "had a legal basis
12  sufficient to survive summary judgment").
13      Defendants further argue that they need to be compensated for a portion of the
14  "unnecessary fees and costs they were needlessly forced to incur in their defense of this
15  matter." (Fee Mot. at 7). Again, this argument ignores Defendants' concession that this
16  action could not be appropriately resolved on summary judgment. They cannot now
17  complain of the expense associated with trying an action that they admitted was
18  warranted. Likewise, Defendants' citation to *Gilbert v. New Line Productions, Inc.*, No.
19  CV 09-02231-RGK, 2010 WL 5790688, at *3 (C.D. Cal. Dec. 6, 2010), is inapposite. In
20  *Gilbert*, the court awarded defendants their attorneys' fees where the court held "on
21  multiple occasions" that the plaintiff failed to prove substantial similarity "as a matter of
22  law" at both the motion to dismiss and summary judgment stages. *Id.* at *2. Here, in
23  contrast, the parties proceeded to a full bench trial.
24      Instead, the Court should bear in mind that because both parties took reasonable
25  litigating positions, awarding Defendants their attorneys' fees would only serve to "deter
26  those who should be properly prosecuting and defending claims under the Copyright Act."
27  *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2019 WL
28  1429588, at *5 (S.D. Cal. Mar. 29, 2019); *see also Matthew Bender & Co., Inc. v. West*

*Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001) ("the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.").

Finally, Defendants contend that awarding them attorneys' fees would serve the purposes of the Copyright Act because it would "'encourage the production of original literary, artistic, and musical expression for the good of the public.'" (Fee Mot. at 6 (quoting *Fogerty*, 510 U.S. at 524)). But Defendants' conduct in designing and producing the Kangaroo duck was far from original or artistic. Rather, Defendant Ligeri's business model was premised on identifying successful products in the marketplace—including GAME's Derby Duck—and then making only "slightly different versions of those products . . . ." (Order at 4). Awarding Defendants their attorneys' fees would encourage them and other companies to continue copying protected works "without apparent concern about possible intellectual property violations." *Id.* *See also Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) (rejecting prevailing defendant's argument that its successful defense furthered a primary objective of the Copyright Act where defendant "while not technically violating the virtual identity standard of copyright infringement, nevertheless constituted a highly questionable business practice.").

### III. DEFENDANTS ARE NOT ENTITLED TO THEIR ATTORNEYS' FEES UNDER THE LANHAM ACT

Despite moving only for an award of attorneys' fees under the Copyright Act—and briefing arguments solely under section 505's standard—Defendants seek a ruling that they are entitled to recover *all* of their attorneys' fees. (Fee Mot. at 7-8). That is, Defendants assert that the claims in this action are "so intertwined" that apportionment among the fees they incurred in defending against the different claims is impossible. *Id.*

Defendants are not entitled to recover their attorneys' fees under the Lanham Act because, for the same reasons discussed above, they do not satisfy 15 U.S.C. § 1117(a)'s heightened fee standard. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (*en banc*) (courts evaluating attorney fee awards under the

1  Lanham Act's "exceptional" case standard should evaluate nonexclusive factors such as
2  frivolousness, motivation, objective unreasonableness, and considerations of
3  compensation and deterrence). The "exceptional case" standard for awarding fees under
4  the Lanham Act is considered more stringent than the "prevailing party" standard under
5  the Copyright Act. *Sigma Enters., LLC v. Alluring Deals, LLC*, No. SA CV 17-1074-
6  DOC (JCGx), 2017 WL 10439659, at *10 (C.D. Cal. Nov. 15, 2017).

7  Although Ninth Circuit precedent contemplates that a party may be able to recover
8  fees for both copyright and non-copyright claims where the claims are related (*see The
9  Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003)), "the
10  impossibility of making an *exact* apportionment" between "non-recoverable Lanham Act
11  claims" and copyright claims does not excuse a court from "mak[ing] some attempt to
12  adjust the fee award in an effort to reflect an apportionment." *Cairns v. Franklin Mint
13  Co.*, 292 F.3d 1139, 1157-58 (9th Cir. 2002) (internal quotations omitted). *See also
14  Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000) ("apportionment or an attempt
15  at apportionment is required unless the court finds the claims are so inextricably
16  intertwined that even an estimated adjustment would be meaningless.").

17  Here, Court is able to differentiate between the work that Defendants' counsel
18  performed in defending against GAME's copyright and non-copyright claims. For
19  example, Defense counsel's billing entries contain various references to their work on the
20  trademark claims. Further, Defendants' expert's reports were devoted almost entirely to
21  discussing trademark-specific issues such as likelihood of consumer confusion and other
22  *Sleekcraft*[4] factors. *See generally* Trial Exhibits 114 and 115. Thus, contrary to
23  Defendants' assertion, it would not be "impossible to differentiate" between their defense
24  of GAME's copyright and trademark claims. (Fee Mot. at 7); *see also Randolph v.
25  Dimension Films*, 634 F. Supp. 2d 779, 799 (S.D. Tex. 2009) (holding that

---

[4] *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *overruled on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (discussing the eight, non-exclusive factors to be applied in evaluating the likelihood of consumer confusion necessary to prove a trademark infringement claim).

1  notwithstanding the relatedness of some claims, "the defendants likely spent some time on
2  these claims that did not overlap with the copyright infringement claims" such as time
3  spent on researching claim-specific legal elements and drafting discrete portions of
4  motions); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 58 (S.D.N.Y. 2015)
5  (where prevailing party met the fee standard under the Copyright Act, but not the Lanham
6  Act, the court made an "unscientific but carefully considered assessment" to reduce fees
7  by 20% to account for trademark-specific expert testimony, examination, and briefing).

## IV.  DEFENDANTS' CLAIMED ATTORNEYS' FEES ARE NOT REASONABLE[5]

Even if the Court determines that Defendants are entitled to attorneys' fees (and for the above reasons they are not), Defendants' claimed fee award of $255,257.00 is not reasonable. The burden of proving reasonableness rests with the party claiming attorneys' fees. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). To demonstrate that the amount of time spent on the case was reasonable, Defendants must present more than simple records listing the time defense counsel spent on the case. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). Counsel must also demonstrate that the time spent was reasonably necessary to the effective prosecution or defense of the claims. *Id.* at 1385 n.4. In addition, Local Civil Rule 54.2 mandates that the party seeking attorneys' fees provide supporting documentation sufficient to establish the reasonableness of the claimed fees. LRCiv. 54.2(d)-(e); *J & J Sports Prods. Inc. v. Macia*, No. CV-13-00921-PHX-DGC, 2014 WL 3747608, at *2 (D. Ariz. July 30, 2014). Case law construing the reasonableness of fees "'applies uniformly' to all federal fee-shifting statutes." *St. Paul Guardian Ins. Co. v. Town of Colorado City*, No. CV-13-08297-PCT-JAT, 2016 WL 4181190, at *5 (D. Ariz.

---

[5] Despite the section of the Fee Motion titled, "Defendants' Attorney Fees And Costs Are Reasonable" (Fee Mot. at 8), Defendants' supporting documentation indicates that they seek only to recover the attorney's fees—not costs—that they incurred. However, to the extent the Fee Motion also requests costs not already claimed in Defendants' Bill of Costs (ECF 202), the Court should deny those costs. *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 876 (2019) (holding that the Copyright Act does not authorize a court to award costs beyond the six enumerated categories listed in 28 U.S.C. § 1920).

Aug. 8, 2016) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### 1. Defendants cannot recover fees charged for clerical or administrative tasks

Clerical or administrative tasks, even those performed by a paralegal, are not recoverable as part of an attorneys' fee award. *See Pearson v. Nat'l Credit Sys., Inc.*, No. CV 10-526-PHX-MHM, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13. 2010); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (clerical tasks such as filing and document organization "should [be] subsumed in firm overhead rather than billed at paralegal rates"). The attorney declarations submitted in support of Defendants' Fee Motion are replete with billing entries reflecting non-recoverable clerical and administrative tasks such as: (1) electronic endorsement of document images and configuring electronic files; (2) transferring case files to new or additional counsel; (3) e-filing and serving court documents and general file management; (4) calendaring and docketing events and deadlines; (5) communicating with prior law firm's accounting department regarding billing issues; and (6) communicating with court staff. A comprehensive list of Defendants' clerical and administrative tasks to which GAME objects is set forth in the declaration of Joseph G. Adams, attached hereto.

The Fee Motion contains several billing entries for "[e]lectronically endors[ing] document images" and "import[]documents into discovery document database." *See* Motolenich-Salas Decl., Ex. A. Time spent bates stamping documents is not recoverable as part of a fee award. *See, e.g.*, *Schrum v. Burlington N. Santa Fe Ry. Co.*, No. CIV 04-0619-PHX-RCB, 2008 WL 2278137, at *12 (D. Ariz. May 30, 2008) (clerical or secretarial tasks such as bates labeling documents—even when performed by a paralegal—are not compensable as part of an attorneys' fee award); *Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119-PHX-JAT, 2016 WL 5118316, at *16 (D. Ariz. Sept. 21, 2016) (defendants should have deducted billing entries for "printing, e-filing, and downloading" from their fee request).

The Fee Motion also contains billing entries associated with transferring Defendants' case file to new or additional counsel. *See* Motolenich-Salas Decl., Ex. A (10/11/17 "Review list of documents for transfer to new law firm and approve list); Rudder Decl., Ex. A (9/19/2017 "Prepare letter to Gallagher & Kennedy authorizing transfer of file to CHDB."). GAME should not be expected to bear the cost of the clerical work associated with defense counsel substitutions. *See Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2017 WL 446316, at *4 (N.D. Cal. Feb. 2, 2017) ("fees for time performing clerical work . . . [are] generally not recoverable.").

Defendants impermissibly seek fees associated with e-filing and serving court documents and general file management. *See, e.g.*, Rudder Decl., Ex. A (10/2/2017 "Finalize the Stipulation for Substitution of Counsel, electronically file with the Court and serve" and 2/21/2018 "Receive and process [court document] for the management and retention of evidentiary materials."). Routine e-filing, service, document organization, and filing are not recoverable attorneys' fees. *See, e.g.*, *Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012) (district court properly denied recovery of attorney's fees for "purely clerical tasks such as filing documents and preparing and serving summons"); *Lopez v. Mauisun Comput. Sys., Inc.*, No. CV-12-00414-TUC-BPV, 2016 WL 524659, at *3 (D. Ariz. Feb. 10, 2016) (task of e-filing documents is clerical in nature and cannot be recovered as attorney's fees under the lodestar methodology); *Nadarajah*, 569 F.3d at 921 (reducing attorneys' fee award to eliminate clerical tasks performed by a paralegal such as "filing, transcript, and document organization time"): *Arizona Dream Act Coal. v. Brewer*, No. CV 12-02546-PHX-DGC, 2018 WL 6448395, at *6 (D. Ariz. Dec. 10, 2018) (reducing claimed fee entries for filing documents).

Defendants likewise cannot recover fees incurred in connection with calendaring and docketing case events and deadlines. *See, e.g.*, Rudder Decl., Ex. A ("Receive and review [court filing] . . . and docket" and "calendar briefing deadlines."). Calendaring, scheduling, and docketing activities "should be subsumed in firm overhead rather than billed at paralegal or attorney rates." *Arizona Dream Act Coal.*, 2018 WL 6448395, at *6.

Defendants also seek to recover fees incurred in communicating with a prior law firm's accounting department regarding billing issues. *See, e.g.*, Rudder Decl., Ex. A (12/6/2018 "Teleconference with . . . Gallagher Kennedy regarding a billing statement"). GAME should not be expected to pay for these purely administrative tasks.

Finally, Defendants should not be awarded fees incurred in communicating with the Court and court personnel. *See, e.g.*, Rudder Decl., Ex. A (3/18/2019 "Meeting with Court Deputy regarding delivery of exhibits to the Court, inflate the necessary exhibits."); *Arizona Dream Act Coal.*, 2018 WL 6448395, at *6 (reducing claimed fee entries for communicating with court staff).

### 2. Defendants cannot recover fees charged for excessive, redundant, vague, or unnecessary work

A prevailing party's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Pursuant to Local Civil Rule 54.2, a party seeking an award of fees "must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." LRCiv. 54.2(e)(2). Courts will reduce claimed fees for time entries that "are too vague for the Court to fully determine the reasonableness of the charges." *Arizona Dream Act Coal.*, 2018 WL 6448395, at *8. As fully set forth in the Adams Declaration, the Fee Motion contains several entries that appear to reflect excessive, redundant, vague, or otherwise unnecessary work.

The Williams Declaration contains two billing entries from July 31 and August 1, 2018 concerning Defendants' preparation of a summary judgment motion. *See* Williams Decl., Ex. A. However, the Court determined at the July 27, 2018 status conference that summary judgment was not appropriate and instead set this action for trial. *See* July 27, 2018 Status Conference Tr. at 17:9-10 (ECF 106). Thus, it was unnecessary for defense counsel to bill time associated with drafting a motion for summary judgment after the Court's ruling that it would not consider dispositive motions. *See, e.g., Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Dronkanoki, Inc.*, No. C-06-

2045 SC, 2006 WL 8442219, at *7 (N.D. Cal. Sept. 11, 2006) (declining to award any fees for tasks that had "no apparent purpose given the posture of the case at the time").

The billing records also contain duplicative billing entries that should be eliminated. Two entries from January 31, 2018 contain nearly identical narratives concerning reviewing and responding to communications from opposing counsel regarding depositions and deposition scheduling. *See* Rudder Decl., Ex. A. In addition, the February 26 and March 5, 2018 billing entries show that two different attorneys performed the same task concerning preparation for Defendant Ligeri's deposition. *See* Rudder Decl., Ex. A (on February 26, 2018, Ms. Rudder "Complete[d] review and annotation of client's deposition in the Rubie's Costume case to prepare for client's deposition," while on March 5, 2018, Mr. Grimm "Stud[ied] J. Ligeri's prior, 600-page deposition in the Ruby case in preparation for Mr. Ligeri's deposition."). The Court should eliminate these duplicative entries. *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 620 (9th Cir. 1993) (court may "exclud[e] hours that are duplicative or unnecessary.").

Finally, the Rudder Declaration contains vague and excessive billing entries concerning Mr. Grimm's work on deposition designations for four witnesses. *See* Rudder Decl., Ex. A (Entries on August 22, 23, 29, and 30, 2018). Each of the entries describes counsel's work as simply either "Study Plaintiff's deposition designations" or "Select deposition designations." *Id.* Moreover, counsel spent anywhere from four to six-and-a-half hours for *each* "study" or "select" task. *Id.* The Court should eliminate or substantially reduce these fees. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("hours may be reduced by the court where documentation of the hours is inadequate . . . [or] the hours expended are deemed excessive or otherwise unnecessary"), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *Arizona Dream Act Coal.*, 2018 WL 6448395, at *8 (examples of vague times entries included "document review," "work on discovery," and "trial preparation."); *Goddard v. Babbitt*, 547 F. Supp. 373, 377 (D. Ariz. 1982) (eliminating "[c]ertain of the hours [that] were described in such

a cursory manner, that it is impossible for a reviewer to determine whether the time was justified.").

## V. CONCLUSION

For the foregoing reasons, GAME respectfully requests that the court deny Defendants' Fee Motion in its entirety. In the event that the Court grants the Fee Motion, GAME requests a finding that Defendants' requested amount is unreasonable and that the Court reduce the requested fee award pursuant to the foregoing arguments and the attached supporting declaration.

DATED this 29th day of August, 2019.

SNELL & WILMER L.L.P.

By: *s/ Joseph G. Adams*
Joseph G. Adams
Taryn J. Gallup
One Arizona Center
400 E. Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202

Attorneys for Plaintiff/
Counterdefendant Great American
Duck Races, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

By: *s/ Mandy Garsha*
4834-2204-1761