**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Great American Duck Races Incorporated, | No. CV-17-00212-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Kangaroo Manufacturing Incorporated, et al., | |
| Defendants. | |

After prevailing at trial, Defendants Kangaroo Manufacturing, Inc., Yagoozon Inc., and Justin Ligeri (collectively, "Defendants") seek an award of $249,298.50 in attorneys' fees. Plaintiff Great American Duck Races Inc. ("GAME") believes no award of fees is merited but, if an award is made, it should be substantially less than what Defendants seek. Based on the relevant factors, and especially the objectively reasonable nature of GAME's copyright claim, Defendants' motion will be denied.

## BACKGROUND

Sometime in 2016, Defendants began selling a pool float in the shape of a duck wearing sunglasses. That float was similar to a copyrighted pool float manufactured by GAME. In January 2017, GAME filed the present suit against Defendants.[1] The original complaint contained claims for copyright infringement, trademark infringement, federal unfair competition, and Arizona unfair competition. (Doc. 1). Defendants answered the complaint and asserted seven counterclaims. Three of the counterclaims sought

---
[1] The original complaint did not include Ligeri as a defendant. For simplicity, however, the history of Ligeri becoming a named defendant will be ignored.

declaratory judgment that there had been no copyright infringement, no trademark infringement, and no unfair competition under federal or Arizona law. In other words, those three counterclaims were mirror images of GAME's claims for relief. Defendants asserted additional counterclaims for declaratory judgment involving copyright invalidity and trademark invalidity as well as counterclaims seeking cancellation of certain trademarks and relief based on GAME making misrepresentations to a non-party seller. (Doc. 18). After a Scheduling Conference, the parties proceeded with discovery.

At a post-discovery status conference Defendants agreed to dismiss four of their counterclaims. Dismissing those four counterclaims meant the pending claims and counterclaims were based on copyright infringement, trademark infringement, and unfair competition. After discussing the underlying facts with both sides, Defendants conceded a trial was necessary. Trial was set for October 2018.

Shortly before trial, Yagoozon provided notice that it had filed for bankruptcy. (Doc. 120). The trial was continued to give the bankruptcy court time to rule on GAME's motion for relief from the automatic stay. Once the bankruptcy court granted that motion, the trial was reset for March 2019. (Doc. 145). On February 8, 2019, GAME requested the Court dismiss its demand for monetary relief and conduct a bench trial instead of a jury trial. (Doc. 147). Defendants did not object to either request. Thus, GAME's demand for monetary relief was dismissed and a bench trial was set. (Doc. 151). After a two-day bench trial, the Court entered judgment against GAME on all of its remaining claims. The Court also dismissed Defendants' remaining counterclaims because they were "mirror images of GAME'S affirmative claims for relief" and there was no need to enter declaratory judgment. (Doc. 198 at 19).

Defendants now seek an award of attorneys' fees pursuant to the Copyright Act. According to Defendants, the relevant factors under the Copyright Act support such an award. Defendants argue they should be awarded all the fees they incurred in defending this suit because GAME's copyright, trademark, and unfair competition claims were "so intertwined" that it would be impossible to identify the time spent on individual claims.

(Doc. 201 at 7). GAME responds that the factors under the Copyright Act do not support an award of fees, Defendants should have identified the time spent litigating each claim, and the total amount of fees requested is not reasonable.

**ANALYSIS**

If Defendants are not entitled to an award of fees under the Copyright Act, there is no need to address whether Defendants should have identified the time spent on litigating each claim nor is there any need to address the overall reasonableness of the amount requested. Thus, the analysis begins and ends with Defendants' entitlement to fees under the Copyright Act.

The Copyright Act states a "court may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. This language "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). Courts have identified a long list of nonexclusive factors a court should use as "judicial guideposts" for deciding whether to award fees. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018). The factors include:

1. the losing party's "objective unreasonableness (both in the factual and in the legal components of the case)";
2. whether the losing party's positions were frivolous;
3. the losing party's motivation;
4. "the need in particular circumstances to advance considerations of compensation and deterrence";
5. "the degree of success obtained in the litigation";
6. the purposes of the Copyright Act; and
7. "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant.]"

*Id.* Of these factors, the Court must "accord substantial weight" to the first factor involving the losing party's "objective unreasonableness." *Shame On You Prods., Inc. v. Banks*, 893

F.3d 661, 666 (9th Cir. 2018).

### 1. Objective Unreasonableness

GAME did not prevail on its copyright claim but "a legal argument that loses is not necessarily unreasonable." *Id.* From the beginning of this suit, GAME's copyright claim appeared to have a reasonable factual and legal basis. That was evidenced by Defendants not seeking early termination of this suit through, for example, a motion to dismiss or for judgment on the pleadings. *See id.* at 665 (awarding fees after granting judgment on the pleadings). And even after all discovery was completed, Defendants conceded GAME's copyright claim could not be resolved via a summary judgment motion. *Cf. Gilbert v. New Line Prods., Inc.*, No. CV 09-02231-RGK RZ40, 2010 WL 5790688 (C.D. Cal. Dec. 6, 2010) (awarding fees after granting summary judgment to defendant). Therefore, Defendants' actions indicated GAME's copyright claim was not objectively unreasonable. Accordingly, this factor weighs against an award of fees.

### 2. Frivolousness

GAME's copyright claim was not frivolous and this factor weighs against an award of fees.

### 3. Motivation

There was no evidence GAME was pursuing its copyright claim for an improper motive. GAME appears to have had a good faith belief that its copyright prohibited Defendants' activities. While GAME was incorrect, the fact that GAME lost does not establish improper motivation.

Defendants attempt to avoid this conclusion by stating GAME had an "anti-competitive motivation in bringing this suit." While not entirely clear, Defendants seem to be arguing GAME's motivation in bringing this suit was to prevent similar products in the marketplace. But almost all copyright infringement litigation could be described in terms of having an "anti-competitive motivation" in that it seeks to prevent others from selling a product similar to a copyrighted work. The "anti-competitive motivation" identified by Defendants is just a natural part of copyright litigation.

Defendants also attempt to impugn GAME's motivation for filing this suit by pointing to GAME's dismissal of its demand for monetary relief shortly before trial. Defendants seem to believe GAME unnecessarily increased the cost of this litigation by forcing "Defendants to prepare a defense to the potential for monetary relief." (Doc. 201 at 6). But there is no indication GAME originally pursued monetary relief solely to increase the expense of defending this case. Rather, GAME appears to have sought monetary relief in good faith but once Yagoozon declared bankruptcy, GAME concluded Defendants were unlikely to pay any monetary relief. Because of that, GAME chose to simplify trial by agreeing to dismiss its demand for monetary relief. Doing so decreased Defendants' expenses in that a jury trial would have taken longer than the bench trial. Because there is no indication GAME had an inappropriate motive, this factor weighs against an award of fees.

### 4. Compensation and Deterrence

The factor regarding "considerations of compensation and deterrence" is closely related to the factor, discussed later, addressing whether an award of fees would further the purposes of the Copyright Act. But to the extent this factor is distinct from the purposes of the Copyright Act, courts have viewed "compensation and deterrence" as recognizing "parties that must defend themselves against meritless claims" should be compensated while "non-meritorious lawsuits" should be deterred. *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *12 (C.D. Cal. Mar. 24, 2015).

In the present case, Defendants prevailed but GAME's copyright claim was not "meritless" and awarding attorneys' fees in this case might deter copyright holders from filing meritorious claims. This factor weighs against an award of fees.

### 5. Degree of Success

Defendants enjoyed "total success" in defending GAME's copyright claim but that is not a complete picture of the litigation. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018). Defendants originally asserted a claim for declaratory relief that was a mirror image of the GAME's copyright claim. Defendants never provided any

explanation for asserting this counterclaim and, even at trial, Defendants did not focus on the counterclaim or provide any indication it was necessary. Once GAME's copyright claim failed on the merits, Defendants' counterclaim was dismissed without prejudice. It appears the counterclaim for declaratory judgment served no purpose other than increasing the complexity of this suit.

In addition to the counterclaim for declaratory judgment of no copyright infringement, Defendants also asserted a counterclaim seeking "declaratory judgment of copyright invalidity." (Doc. 93 at 31). Defendants agreed to dismiss this counterclaim shortly after the completion of discovery. (Doc. 106 at 3). It is unclear whether Defendants had a substantial legal or factual basis for this counterclaim. But, at the very least, Defendants were not a prevailing party on this counterclaim. Thus, while Defendants prevailed on GAME's copyright claim Defendants did not prevail on their counterclaims brought under the Copyright Act. The factor regarding "degree of success," therefore, weighs against an award of fees.

### 6. Purposes of the Copyright Act

Under this factor, the Court must determine "whether an award [of fees] will further the purposes of the [Copyright] Act." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). "[T]he Act's primary objective is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Id.* And fee awards "should encourage the types of lawsuits that promote" that objective. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). This objective can be furthered either through a successful plaintiff or through a successful defense. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.").

By defending this suit all the way through trial, Defendants established GAME could not prevent others from expressing the idea of a pool float in the form of a duck wearing sunglasses. Defendants also established "there are very few protectable elements

in [GAME's duck]." (Doc. 198 at 9). Defendants, therefore, helped mark the correct "boundaries of copyright law." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). This factor weighs in favor of awarding fees.

### 7. Chilling Effect or Inequitable Burden

There is no indication awarding Defendants attorneys' fees would inappropriately chill copyright holders from pursuing meritorious claims. Nor has GAME argued it is unable to afford a fee award. This factor supports an award of fees.

### 8. Summary

GAME's copyright claim had a reasonable legal and factual basis, was not frivolous, and was motivated by a good faith desire to enforce copyright law. In addition, declining to award fees to Defendants would not deter other copyright holders from filing suit and Defendants did not enjoy complete success on the counterclaims brought under the Copyright Act. These facts support denying fees. Facts pointing the other way are that the purposes of the Copyright Act would be slightly better served by an award of fees and awarding fees would not impose an inequitable burden on GAME. Overall, "all the circumstances of [this] case on their own terms," establish an award of fees is not merited. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

Accordingly,

**IT IS ORDERED** the Motion for Attorneys' Fees (Doc. 201) is **DENIED**.

Dated this 21st day of November, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge